# REPORTS OF CASES

DETERMINED IN

# THE SUPREME COURT

OF THE

# STATE OF WYOMING.

October Term, 1902.

## STATE EX REL. SAMMON v. CHATTERTON, SECRETARY OF STATE.

ELECTIONS — CERTIFICATES OF NOMINATION — MANDAMUS — SUFFICIENCY OF PETITION.

1. Whether the fact that the person nominated administered the oath attached to a certificate nominating an independent candidate for public office will render the certificate invalid is not decided, but it is said that such practice is of doubtful propriety.

2. A petition in mandamus to require the filing of a certificate nominating a candidate for public office is insufficient which fails to show that the certificate was offered at the proper office within the time prescribed by law.

3. Where a certificate of nomination, if filed after September 25, 1902, would not have been filed in time, a petition in mandamus to require the filing of the same is insufficient which alleges the presentment of the certificate for filing "on the — day of September, 1902."

4. Where the officer charged with the duty of proclaiming the offices to be filled at an ensuing general election has failed

to include a certain office in the proclamation, acting on the belief that the term of the incumbent was not about to expire, and the people have acted on the same belief, so that *no nomination for the office* has been made by either of the political parties, and the time for making such nomination has expired, mandamus will not be granted to compel the filing of certificates nominating the relator as an independent candidate for the office; since, by reason of the facts, assuming, without deciding, that there ought to be an election, a very large portion of the electors had been misled, and would be prevented from freely and fully expressing their choice, and, therefore, a fair and legal election for the office could not be held at the time fixed for the general election that year; and for that reason an application for such mandamus should be denied, even if it be assumed that the term of the incumbent was about to expire, so as to require the office to be filled at said election.

[Decided October 13, 1902.]                    (70 Pac., 466.)

MANDAMUS.    Original proceeding.

This action was brought in the Supreme Court under its original jurisdiction in the name of the State on the relation of John W. Sammon against Fenimore Chatterton, as Secretary of State, for a writ of mandamus to compel the respondent to file in his office certain certificates purporting to nominate the relator as an independent candidate for the office of Judge of the Third Judicial District, to be voted for at the general election to be held in November, 1902. The cause was heard upon the application for an alternative writ. The facts are stated in the opinion.

*J. H. Ryckman,* for relator.

In 1896 Jesse Knight was elected as Judge of the Third Judicial District. Shortly thereafter he resigned to accept an appointment as Justice of the Supreme Court. The Governor appointed David H. Craig to fill the vacancy. In 1898, at the general election held in that year, the electors elected said David H. Craig as the Judge of the Third Judicial District, and whether that election entitled him to hold for

the unexpired portion of the term only, or to hold for the full constitutional term of six years, is the question now before the court.

The constitution of the State (Art. 5, Sec. 19) provides as follows: "Until otherwise provided by law, the State shall be divided into three judicial districts, in each of which there shall be elected at general elections, by the electors thereof, one Judge of the District Court therein, whose term shall be six years from the first Monday in January succeeding his election and until his successor is duly qualified." Sec. 7, Art. 4, of the constitution, provides that when any office from any cause becomes vacant, and no mode is provided by the constitution or law for filling such vacancy, the Governor shall have the power to fill the same by appointment. Sec. 201 of the Revised Statutes provides that at the general election held in the year A. D. 1896 and at the general election held every sixth year thereafter there shall be elected in each judicial district in this State one Judge of the District Court for such judicial district, and in the case of a vacancy occurring in the said office of a Judge of the District Court in any judicial district of the State, either as now or as hereafter constituted, for any cause whatever, such vacancy shall be filled at the general election, when such vacancy shall be required to be filled by the law or the constitution of this State. Sec. 195 provides that such vacancies shall be filled at the next general election after they occur, except where the vacancy occurs less than twenty-five days prior to such election. While the constitution provides for the election of District Judges and fixes their term of office at six years, it makes no express provision for the filling of vacancies in the office of District Judge, as it does in the case of the office of the Supreme Judge and other such officers. It was left entirely to the Legislature to provide ways and means for the filling of such vacancies. True, the constitution provided that where neither the constitution nor the law of the State provides for the filling of vacancies, the Governor shall have power

to appoint, but even that section certainly contemplates legislative action. The question then arises, what power did the Legislature have in the premises in the absence of constitutional provision? A state constitution, unlike the federal constitution, is not a grant of power, but a limitation upon the power of the Legislature. In the absence of constitutional inhibition, the Legislatures of the several States are supreme; their powers are limited only by the express provisions of the various constitutions. If, then, the constitution in this State, after having provided for the election of District Judges, and having fixed the regular term of office, is silent upon the matter of filling vacancies in such offices, and places no limitations upon the power of the Legislature in that behalf, there is no reason why the Legislature cannot by law provide how the office of District Judge shall be filled in case of a vacancy and what the term of the incumbent, so elected, shall be. This question came before the Supreme Court of Arkansas in the case of State v. Sorrels (15 Ark., 663), under a constitutional provision very similar to the provision in the Wyoming constitution. The constitution of Arkansas, like the constitution of Wyoming, provided for the election of District Judges and fixed the term at six years, and, like the Wyoming constitution, was silent on the matter of filling vacancies. The Legislature of Arkansas subsequently passed an act providing how such vacancies should be filled, and providing also that the persons elected to fill such vacancies should hold for the unexpired term only. The question then before the Arkansas court was, could the Legislature provide for the election of a Judge to fill a vacancy for an unexpired term when such unexpired term was shorter than the full constitutional term of six years? The Arkansas court very promptly and properly held that, while the Legislature could neither lengthen nor shorten the term of the Judges fixed by the constitution, it had the power to provide for the filling of vacancies and fix the term of the person elected to fill such vacancy at the time shorter than the constitutional term.

The court held in that case that, since the Legislature of the State of Arkansas was supreme in all things in the absence of constitutional inhibition, and since the constitution had made no provision for the filling of vacancies in the office of District Judge, the Legislature had the undoubted power to fill such vacancies in whatever manner it saw fit.

The Legislature of 1890-1891 enacted Section 201 of the Revised Statutes with the view to filling in the gap left by the constitution and providing a mode for the filling of vacancies in the office of District Judge. This statute provides that there shall be an election for the office of District Judge in the year 1896 and every sixth year thereafter in each Judicial District in the State; further on the same section provides that, in case of a vacancy occurring in the office of the District Judge, the same shall be filled at the general election, when such vacancy shall be required to be filled by the law or the constitution, which would be at the next ensuing general election after the vacancy occurs, under the authority of Section 195. It will thus be seen that the Legislature did not in express words provide that the person elected to fill a vacancy in the office of District Judge should hold for the unexpired term only, but did provide that there should be an election for District Judges in the year 1896 and every sixth year thereafter, uniformly, in all the districts of the State. It is an elementary rule of statutory construction that a statute should, if possible, be so construed as to give effect to each and every part of it, for such was the evident intent of the Legislature. It will be seen at a glance that, in order to give effect to the first portion of this section and to hold an election for judges in the year 1896 and every sixth year thereafter in each of the Judicial Districts of the State, it is necessary to construe the latter portion of the section so as to limit the term of the person elected to fill a vacancy in the office of the District Judge to the remainder of the unexpired term thereof, and this was undoubtedly the intention of the Legislature. Under our system of government, uniformity in the time

of holding elections is absolutely essential, for, as was said by the Supreme Court of Mississippi in the case of Smith v. Halfacker (6 How., 598), when this same question was under discussion by that court, the right of voting for judges and other officers is a privilege that is enjoyed by the electors of a free country, and if those elections are not held at stated intervals and times the whole system will result in a chaos, and this right would become a burden instead of a privilege. Another thing to be considered in the construction of this section is the meaning of the word vacancy as there used. At common law the King was the source of all power and the disposer of office; all public offices were granted by him on the condition of good behavior, and no public office could be granted for a term of years. From whatever cause a vacancy might occur in public office, the office reverted to the King to be again filled or granted by him for life, conditioned on good behavior or during the pleasure of the King. As a consequence, there could be no vacancy in the term of a public officer, for there was no term, the incumbent holding for life or during the pleasure of the King, and when a vacancy did occur, the vacancy must necessarily be in the office itself. In this country, where written constitutions prevail, most of the public officers are elected, and for a fixed term, with varying provisions as to filling vacancies. As will be seen, then, the reason for holding that the term vacancy means a vacancy in the office, and not in the term, as was held in common law, does not exist under our popular form of government, with its fixed and definite terms of office. This was also the reasoning of the Supreme Court of Mississippi in Smith against Halfacker, above cited, when this precise question was before them. In that case the Mississippi court held that these statutes, whenever possible, should be construed as to limit the term of persons elected to fill vacancies to the remaining portions of the unexpired terms, and thus secure uniformity, regularity and felicity in the holding of elections.

Not only would such construction be in harmony with the above rules of statutory construction and carry out the evident intent of the Legislature, but it would likewise be in harmony with the policy of this State as expressed by the laws, the constitution and the decisions of the courts. See the opinion of Mr. Justice Conaway, *in re* Moore, 4 Wyo., 98, in which these statutes and the policy of our law with reference thereto are fully and ably discussed.

While we are aware of the fact that there are decisions of the courts of some States that would seem at first blush to hold otherwise, it will be seen upon examination that these decisions were rendered under constitutional provisions different from those of Wyoming. In Wisconsin, for instance, the constitution provides that the term of office of District Judge shall be six years, and that in case of a vacancy some person shall be elected to fill such vacancy at the next ensuing election. Here, then, there is no room for but one construction, and that is that the person elected to fill the vacancy holds for the full constitutional term, for that was the evident intention of the framers of the constitution itself, and this could not be altered or abridged by subsequent legislative enactment. Again, in some States, Oregon, for instance, the constitution provides in express terms that a term of office of the District Judge shall be six years, and that in case of a vacancy the person elected at the next ensuing election shall hold for the unexpired term; here again there is no room for legislative enactment or for dispute as to what was the intention of the framers of the constitution, for here the constitution provides in express terms what the term of the officer elected to fill a term shall be with as much clearness as it defines the term of a person regularly elected to such office.

Unlike the constitution of the State of Wyoming, the constitutions of most of the States provide some mode for the filling of vacancies in the office of the District Judge. The one positive exception we know of to this rule is in the case of the constitution of the State of Arkansas at the time

the opinion in the case of the State against Sorrels was rendered. One would also gather from the opinion in the case of Smith against Halfacker that the constitutional provisions in Mississippi at that time were similar to those in Wyoming, and in both of these States, as well as in Virginia (Jameson v. Hudson, 82 Va., 279), the courts have held that a judge elected to fill a vacancy in the office of judge under the statutory and constitutional provisions now under discussion holds for the unexpired term only, and not for the full constitutional term of six years.

If it be true, as contended for on the part of the defendant, that Judge Craig was elected for the full constitutional term in 1898, then by what course of reasoning do they arrive at the conclusion that he was not appointed for a full constitutional term in 1897? It is immaterial whether one acquires the right to an office by election or appointment, the term would in either event be the same, and if it should be held that Judge Craig was appointed for a full term in 1897, then all the regularity and uniformity in the holding of elections in Wyoming is done away with, and election will be held at such times as chance or fate may decree, for no man knows when a public office may become vacant by the death or resignation of the incumbent. How much better to adopt the construction contended for by the plaintiff in this case, which, if adopted, would promote and insure regularity and uniformity in the holding of elections and carry out the evident intent of the Legislature and the framers of the constitution. To revert again to Section 201 of the Revised Statutes, it will be seen that unless the word vacancy, as used in the latter part of that section, be construed to mean a vacancy in the term as distinguished from a vacancy in the office, and unless said last portion of that section be so construed that one elected to fill a vacancy in the office of judge hold for the unexpired term only, the entire earlier portion of the section will be rendered nugatory and of no effect. Elections, instead of being held at uniform intervals of six years in all the districts through-

out the State, will be held at different and various times, and the will of the people as expressed by the Legislature will be thwarted. On the other hand, if construed as we contend they ought to be construed, both portions of this section will be harmonized without doing violence to either and uniformity and regularity will be preserved in the holding of elections, and the evident intention of the Legislature carried into effect.

A District Judge elected by the people in California in 1859 held for six years, although the election was held and by the Governor's proclamation was directed to be held to fill only the vacancy during the unexpired term. (People v. Burbank, 12 Cal., 378.)

The language of the constitution is, "The said judges shall hold their offices for the term of six years," but it must be noted that there is no statutory provision in California as there is in Wyoming for the filling of vacancies. Here the constitutional convention, if not by express direction, at least by their omission to provide for vacancies in any manner relegated the matter of vacancies to the Legislature, and the Legislature at its first session enacted necessary laws to provide for the filling of vacancies in the office of District Judge. So this case is distinguishable from the California cases. This case is likewise distinguishable from the New York cases, where the provision of the constitution is "that, if the office become vacant before the expiration of the regular term, the vacancy may be filled by the Governor until it shall be supplied at the next general election of judges, when it shall be filled by the election of a judge for the residue of the unexpired term." It is said by the Supreme Court of California in Brodie v. Weller, 11 Cal., 77, that the constitution, while it fixes the period of tenure, does not fix any day for the commencement of the terms of the judges.

The word "vacancy" in the constitution and statutes means in the term and not in the office. Whenever there is a vacancy in a judicial office it shall be filled at the general

election. (Session Laws 1890-91, 236; R. S., 195.) Whether the word "vacancy" means "in the term" or "in the office" depends upon the intent of the framers as expressed in the constitution and the statutes, and it cannot be doubted that the framers of our consitution and the several Legislatures who have had occasion to employ the term have used it in the meaning of vacancy "in the term" and not "in the office." (Jameson v. Hudson, 82 Va., 279; Burks v. Huston, 79 Va., 1.)

The term vacancy as used in the constitution (Art. 4, Sec. 7) has that meaning. If not, the Governor would have power, in case of a vacancy, to appoint for the full constitutional term of six years, and this has never been contended by anyone, so far as we know, either by a court or by a Legislature, and we contend that the word vacancy, as used in Article 4, Section 7, of the constitution, has the same meaning wherever it occurs, either in the constitution itself or the statutes.

The Supreme Court has apparently taken for granted heretofore that all District Judges are to be elected in 1896 and every sixth year thereafter. The Legislature of 1893, by the act of February 9th, 1893, creating a Fourth Judicial District, put their construction upon Article 5, Section 19, of the constitution, and Section 201 of the Revised Statutes, being a portion of the act in relation to elections passed by the First Legislature of the State of Wyoming. Furthermore, the construction put upon Article 5, Section 19, of the constitution, by the Legislature of 1890-91, may be said to be a contemporaneous construction, and, therefore, is entitled to even greater respect than that of the subsequent Legislature, and the fact that subsequent Legislatures construed the constitution in the same manner, is highly persuasive with courts called upon to construe the same act. It is a familiar principle that when the duration of a term of office filled by popular election is in doubt and uncertainty, the interpretation is to be followed which limits it to the shortest time and returns to the people at the earliest

period the power to refill it.  (*In re* Terms of Judges, 21 S. E., 966.)

The constitution, by implication at-least, left to the Legislature the election of judges to fill vacancies.  Therefore, the legislative will is controlling.  (People v. Townsend, 7 N. E., 764.)

In *ex parte* Meredith, 33 Grat., 119; 36 A. R., 771, it was held that judges elected to fill a vacancy hold for the full term, but in Virginia, at that time, such elections were by the Legislature, and the court, in delivering the opinion, say that when offices are to be filled by the people the primary object is uniformity.  As no such reason exists when the election is by the Legislature, therefore the judges elected by the Legislature to fill vacancies should be for the full constitutional term.  It will be noted, too, that in Virginia no distinction is made between the term of the County Judge elected at the expiration of the constitutional term of six years and the term of a judge elected to fill a vacancy.  While in Wyoming the filling of vacancies of District Judge is left to the Legislature, and no one will say that the Legislature has not the power in such a contingency not only to provide for the filling of the vacancy, but to shorten the term of the person so elected.  (State v. Nebling, 6 O. S., 40.)

If Section 201 is valid, and no election is held this year for Judge in the Third District, Judge Craig will hold either by virtue of his election in 1898, or by virtue of his appointment by the Governor prior to said election, until 1908.  (People v. Hardy, 29 Pac., 1118.)

Judge Craig was appointed by the Governor to hold only until the people at the next general election thereafter should have an opportunity to elect a judge.  When that opportunity came the people elected Judge Craig for the unexpired term of Judge Knight, and no greater period, and this is in accordance with the policy of the law as announced by the Supreme Court.  (*In re* Moore, 31 Pac., 980; *In re* Board of Commissioners, 32 Pac., 850.)

Article 4, Section 7, which this court has said applies to the filling of vacancies in the office of District Judge by the Governor means one of three things: First, it means that the Governor could appoint to fill the vacancy for the full constitutional period of six years; or, second, it means that the Governor could appoint to fill the vacancy for the unexpired term of Judge Knight; or, third, it means that the Governor could appoint to fill the vacancy until the next general election.

Now, which of these three things does it mean?

If it means the first, there ought to have been no election in 1898, nor should there be an election this year. When then would the next election be held for Judge of the Third District if the first proposition be true? Either at a special election under Section 209 or at the next general election after the expiration of the six years from the time of the appointment. In which event there would be no election until 1904, and Judge Craig would hold not for the constitutional term of six years alone, but for the interval to elapse between the expiration of his appointment for six years and the next general election. No such absurd claim has ever been made by anyone, so far as we know, and if the word vacancy, when to be filled by appointment, means the unexpired term, and vacancy, when to be filled by election, means for the unexpired term, we are then reduced to the remaining two propositions: Was Judge Craig appointed to fill the whole unexpired term of Judge Knight, or was he appointed to fill that portion of the unexpired term which should elapse between the time of the resignation of Judge Knight and the next general election? In either case Judge Craig's term expires on the first Monday of next January, and an election must be held for Judge in the Third District.

*J. A. Van Orsdel,* Attorney General, for respondent.

PER CURIAM.

In this proceeding the relator seeks a writ of mandamus requiring the Secretary of State to file certain certificates

purporting to nominate the relator for the office of District Judge for the Third Judicial District, and a hearing was had upon the application for the allowance of an alternative writ.

It appears by the petition that three certificates purporting to nominate the relator as an independent candidate for the office aforesaid were presented to the Secretary of State for filing, and that said official refused to file them. The petition fails to disclose the date when they were so presented other than by an allegation that they were presented "on the — day of September, 1902." As certificates of original nomination for offices to be filled, at the forthcoming general election, by the electors of a district greater than a county are required to be filed not less than forty days before the day of election, it is apparent that, if they were presented after September 25, they would not have been filed in time. The petition is, therefore, insufficient, failing to show that the certificates were offered at the proper office within the time prescribed by law.

It is insisted by the Attorney General that two of the certificates were insufficient, for the reason that they were sworn to before the relator, who was alone the interested party, and that the oath and jurat attached to the nomination papers fail to disclose the official character of the officer certifying thereto. Without the two certificates that are sworn to before Mr. Sammon himself, he would have no standing, since the third certificate does not contain the names of a sufficient number of persons to make an independent nomination of a candidate for District Judge.

The statute requires that one of the signers to each separate certificate of nomination shall swear that the statements contained therein are true to the best of his knowledge and belief, and that a certificate shall be annexed to each oath. (R. S., Sec. 230.) This is an important regulation. Only electors can make a nomination of an independent candidate for office, and the oath required certifies to the fact among others that the parties making the nomination are electors.

We think it unnecessary to decide whether or not the fact that the oath was administered by the person nominated renders the certificates invalid, if timely objection be made. It is said to be a general rule, referring to notaries public, that if the officer is substantially interested in the transaction, or is a party to it, he is incapable of acting in that particular case. (21 Ency. L., 2d Ed., 568.) And in Illinois the court said: "The propriety of the rule that oaths and affidavits should be taken before officers who are disinterested and unbiased is too manifest to require discussion." But in the case then before the court the officer was held to have been disinterested. (Peck v. The People, 153 Ill., 454.) We have not been cited to any case, however, holding ineffective a paper like the one in question or kindred in character sworn to before a party interested in it. Such a practice is, to say the least, of doubtful propriety. But we do not care to rest our conclusions upon that ground, nor upon the further ground that upon the face of the petition the official character of the one before whom the papers were verified is not disclosed either by a recital of the title of his office in the body of the affidavit or jurat, or following the signature.

For much broader reasons we think the writ must be denied. It is alleged in the petition that the term of office of the present Judge of the Third District will expire on the 1st day of January, 1903. No other fact is alleged that would furnish a basis for the right claimed to make a nomination for that office. The petition does not disclose when or how the present incumbent of that office was chosen, nor for what term he was elected or commissioned. The general allegation above mentioned may, however, be sufficient. We understand, indeed, that Judge Craig was in 1897 appointed to the office to fill the vacancy caused by the resignation of Judge Knight, and at the succeeding general election in 1898 was elected to the office, and that, as the term of Judge Knight would have expired in January, 1903, a question arose whether the election of Judge Craig was for the

balance of the unexpired term, or for the full term of six years.

On the hearing it was suggested that the Secretary of State had not issued any notice for an election of Judge of the Third District; and that there had been no proclamation for an election of one to fill that office at the ensuing general election; that the Secretary of State had acted upon the opinion of the Attorney General, that the term of Judge Craig, the present incumbent, did not expire for two years, and that the people generally of the district had acted upon the belief that no election for District Judge therein was to occur in November, and that under the same belief no nomination had been made by either of the political parties, and the time for making nominations had expired.

Although the petition is silent in these respects, we understand it to be conceded that no notice has been given, and that no other nominations have been made, and it is apparent that it cannot be alleged, even if we should allow time for an amendment, that notice has been given and proclamation made.

This State has adopted what is known as the Australian ballot system of elections. It is now too late to make original nominations for the office of District Judge to be voted for at the next general election. The fact that neither political party has nominated a candidate for the office is strongly conclusive of a general understanding that an election to that office was not to occur, and it is evident that should one now be held a large proportion of the electors of the district would be practically disfranchised, so far as that office is concerned. It is true every voter is accorded the privilege of writing the name of a person he wishes to vote for upon the ballot. But in the carrying out of the system adopted in this State, a method is provided for having names of candidates printed upon the ballot. That is an important privilege. The statute recognizes political parties, and the candidates of each party having cast a certain proportion of the vote at either of the last two preceding general elections

are placed in a separate column; and they may all be voted for by marking a cross in a square at the head of the column.

We think it clear that if an election for Judge of the Third District should be held at the November election, under existing conditions, a very large portion of the voters of the district would be prevented from freely and fully expressing their choice.

We are not prepared to hold that a previous proclamation that a particular office is to be voted for at a general election is in all cases a condition precedent to a valid election, and we do not so hold. Where, although such a proclamation has not been given, the election proceeds, and the electors generally know that it is to occur, and the people have not been misled by the failure to give the required notice, it might be held upon good grounds that the election was a valid one.

Manifestly, the people have been generally misled in this instance, if indeed there ought to occur an election for the office in question. Whether such an election should have been proclaimed and held, we do not decide. The time of the expiration of the term of office of the present incumbent has not been considered, nor do we think it can properly be considered in this proceeding. We hold that, assuming the allegation to be true that the term expires in January, 1903, a valid election to the office cannot be had at the general election this year. A consideration of our election laws has convinced us that it would be a practical impossibility to hold a fair and legal election for said office under the conditions that would be created by requiring an election to said office to be held at this time.

These views are sustained, we think by ample authority. (People v. Weller, 11 Cal., 77; Foster v. Scarff, 15 O. St., 532; Adsit v. Secretary of State, 84 Mich., 420; 11 L. R. A., 534; Cook v. Mock, 40 Kan., 472; McCrary on Elections, Sec. 147.)