OCTOBER TERM, 1903.

# STATE EX REL. SAMMON v. CHATTERTON ET AL., COMPOSING THE STATE BOARD OF CANVASSERS.

MANDAMUS—ELECTIONS—OFFICE AND OFFICER—PLEADING.

1. The State Board of Canvassers can act only on the returns made to it by the several County Clerks.

2. A petition in mandamus to require the State Board of Canvassers to canvass the votes cast for relator for the office of District Judge is insufficient which fails to show that any returns were made of the votes cast for the relator, or for the office named.

3. That the relator was an independent candidate for District Judge; that many duly qualified electors voted for him for said office, and that he received the highest number of votes cast for that office, are insufficient allegations to show that any duty to canvass such votes is enjoined upon the State Board of Canvassers, without showing that the returns of such votes had been made as required by law.

4. The rule that, where an office is to be filled for a regular term at a general election, the absence of the notice provided by law will not invalidate an election, applies only in case an election has been held and the great body of the voters had notice, in fact, of the vacancy.

5. A petition in mandamus to require a Board of Canvassers to canvass and make return of the votes alleged to have been cast for a particular office should show that an election for that office was held, and sufficient facts should be alleged to show *prima facie* a valid election for the office.

6. Where the writ of mandamus is demanded in aid of a private right, the relator must show a legal interest in himself in the result of the action.

7. It appearing that no proclamation for the election of District Judge had been issued, in view of the opinion of the Attorney General that there was no vacancy in the office to be filled, and no nomination had been made by either political party, although the time therefor had expired; and a mandamus had been denied relator prior to the election to require the filing and certifying of his nomination

as an independent candidate, on the ground that the election for the office, if held, would be invalid, because the voters would be largely prevented from freely expressing their choice, on account of the facts aforesaid; and unless relator's nomination was filed and certified, notwithstanding the denial of the writ, the name of the office and of relator would not have been printed on the official ballot; *Held,* in a proceeding by mandamus after election to require the State Board of Canvassers to canvass the votes alleged to have been cast for relator for the office named, that, owing to the peculiar facts of the case, the petition should allege the facts showing the notification, if any, to the electors that an election for the office would be held, whether the name of the office was printed on the official ballots, the number, approximately, of votes cast for the office and for other offices in the district, so as to show, if it be a fact, that the election for the office was participated in by a sufficiently large number of voters to render the election valid as a fair expression of the choice of the electors, independent of the giving of the legal proclamation.

[Decided October 20, 1903.]                    (73 Pac., 961.)

ORIGINAL proceeding in mandamus.

John W. Sammon claiming to have been elected to the office of District Judge for the Third Judicial District, sought, by mandamus, to require the State Board of Canvassers to canvass the votes cast for that office. An alternative writ of mandamus was issued, and the hearing was had upon demurrer to the petition. The facts are stated in the opinion. (The demurrer having been sustained, and no application to amend having been made, the cause was subsequently dismissed.)

*J. H. Ryckman,* for relator.

*J. A. Van Orsdel,* Attorney General, for respondents.

POTTER, JUSTICE.

The relator seeks the aid of this court through the writ of mandamus to require the respondents composing the State Board of Canvassers to canvass and make return of

the votes found to be cast for relator at the general election held in November, 1902, for the office of District Judge of the Third Judicial District, and to make and file with the Secretary of State a certificate containing a statement of the votes so canvassed.

The respondents demur generally to the petition; and the question for determination, therefore, is whether sufficient facts are stated to entitle relator to the relief prayed for.

The petition is defective, in the first place, for failing to show that there is anything before the board upon which they are required to act. The State Board of Canvassers can act only on the returns made to it by the various County Clerks. (State ex rel. Bennett v. Barber et al., 4 Wyo., 56.) On or before fifteen days after the close of any county or general election it is the duty of the County Canvassers, consisting of the County Clerk and two Justices of the Peace of the county, to proceed to open the returns sent in by the various judges of election and make abstracts of the votes. (R. S., Sec. 347.) Immediately thereafter the County Clerk is required to transmit a certified copy of the abstract to the office of the Secretary of State. (Id., Sec. 349.) . The canvass of the votes by the State Board is based upon such abstracts. (Id., Secs. 350, 351.) The petition does not allege that any abstracts or returns of the votes cast for relator or for the office named were sent to the Secretary of State, nor indeed is there any averment that any returns of such votes in any instance were made to the County Clerk by the judges of the election, nor that any such votes were canvassed or abstracted by the County Canvassing Board. The only allegation upon which to base any claim that there is anything to be canvassed is in substance that, at said election, the relator was an independent candidate for said office, and that many persons duly qualified to vote at said general election cast their ballots for him for the said office of Judge of the Third Judicial District, and that, as relator is informed and believes, he re-

ceived the highest number of votes cast at said election for that office.   It is clear that the allegation falls far short of showing that any duty is enjoined by law upon the respondents to canvass those votes.

But we think there are other well founded objections to the petition.   We need not consider the objection that a vacancy is not alleged.   It is averred that an election to the office occurred in 1896 for the term of six years; that the incumbent then elected resigned in 1897, and another was appointed, and at the succeeding general election in 1898 was elected; and it is alleged that such election was for the balance of the unexpired term, which, if true, would have rendered an election of a successor necessary in November, 1902.   It may be conceded, without deciding the question, that the averments are sufficient to show that the term of the incumbent would expire in January, 1903, in consequence of which an election became necessary in 1902.   Treating the averments in that respect as sufficient, we come to the other objections that are urged, viz., that the number of votes received by relator is not alleged, nor the manner in which the votes alleged to have been cast for him was expressed; and that it is not shown that relator's name was placed upon the official ballot, nor that he was nominated as required by law.   And it is further urged that the petition is insufficient because it fails to state that notice was given or proclamation made, as required by law, that an election would be held at the time aforesaid for the office in question.

It is contended on relator's behalf that, as the law regulates the manner of voting, it is unnecessary and improper to allege how it was done in any particular case; and that, as any voter is permitted to write upon the official ballot the name of any person for whom he desires to vote, an allegation is not required that relator's name appeared upon the official printed ballot; and this reason is also suggested as a sufficient answer to the objection that there is no showing as to the nomination of the relator.   And it is contended

that the statute providing for notice is directory, and all persons are presumed to know that an election will be held at a time fixed by law.

It is the generally accepted rule that, where an office is to be filled for a regular term at a general election, the absence of the notice provided for by law will not invalidate an election. (Adsit v. Secy. of State, 84 Mich., 420.) This rule, however, applies, as we understand it, only in case an election has been held, and the great body of the voters had notice *in fact* of the vacancy. "This," in the words of Mr. Mechem, "coupled with the fact that they are presumed to know that the law requires the vacancy to be filled at the next general election, would seem to be sufficient, even though many refrained from voting because of a different construction of the law." (Mechem on Pub. Off., Sec. 174.) But, quoting from a leading case, the author adds: "Where there was no notice, either by proclamation or in fact, and it is obvious that the great body of the electors were misled for want of the official proclamation, its absence becomes such an irregularity as prevents an actual choice by the electors—prevents an actual election in the primary sense of that word—and renders invalid any semblance of an election which may have been attempted by a few, and which must operate, if it operate at all, as a surprise and fraud upon the rights of the many." And it is said that in such case, if the body of voters who were unnotified was so great that they might have changed the result, the election ought not to stand. (Id.)

Where a mandamus is sought to require a Board of Canvassers to canvass the votes cast for a particular office, it ought at least to be shown that an election for that office was held. And, especially where the issuance of the writ is demanded for the protection or in aid of a private right of the relator, the latter must show a legal interest in himself in the result of the proposed action. (State ex rel. Bennett v. Barber et al., 4 Wyo., 56, 80.)

It has been held in a number of cases that in the absence of the legal notice, where it was known only to a limited

number of voters that there was a vacancy to be filled, or that it would be filled at the ensuing general election, or where a doubt existed as to whether there was a vacancy, and but a small number of votes were cast for any candidate to fill the vacancy, the election will be invalid. (State ex rel. v. McKinney, 25 Wis., 416; People v. Crissey, 91 N. Y., 616; Secord v. Foutch, 44 Mich., 89; Toney v. Harris, 85 Ky., 453; People v. Weller, 11 Cal., 77; Foster v. Scarff, 15 O. St., 532.)

It is alleged in the petition that all the electors well knew that the regular term of the office was to be filled at the general election aforesaid, and that many votes were cast for the relator. These averments are preceded by the statement that at said election it was the right, duty and privilege of the qualified electors of the district to elect some qualified person to fill said office for the term of six years from and after the first Monday in January, 1903. We are unable to escape the impression that the attempt of the pleader has been to state conclusions derived from his construction of the law as to the knowledge of the electors that an election for the office was to occur, rather than to allege it as a fact. And the averment as to an election having been held merely states that at the general election aforesaid many voters cast their ballots for the relator for said office, and that he received the highest number of votes cast for the office. As the issuance of the writ of mandamus is largely in the discretion of the court, we are not satisfied that a sufficient showing has been made in respect to the holding of an election for the office to entitle the relator to this extraordinary process. We do not hold that in every case in this kind of application the number of votes cast for a relator and the manner in which the votes were expressed is necessary to be averred. But we think that enough facts should be alleged to show *prima facie* at least that the election for the office was valid and legal, for otherwise the relator would not show a legal interest in the result.

We think it unnecessary to decide or discuss the proposition whether it would be necssary in every case to allege the giving of the legal notices, or in lieu thereof such facts as will clearly show a valid election in their absence. There are, however, some features of this case within the knowledge of the court which we think require it. This relator prior to the general election in 1902 applied to this court for a mandamus to require the Secretary of State to file and certify certain certificates nominating the relator for the office in question, but the writ was refused. (State ex rel. v. Chatterton, 70 Pac., 466, 11 Wyo., 1.)

In that case it appeared that no notice for the election of District Judge in the Third District had been issued, and that there had been no proclamation for such an election, in view of an opinion given by the Attorney General that the term of the incumbent would not expire until January, 1905; and that acting upon that assumption no nomination for the office had been made by either of the political parties, although the time therefor had expired. And we said that it seemed clear that if an election for Judge of the Third Judicial District should be held, under existing conditions, a very large portion of the voters would be prevented from freely and fully expressing their choice. We expressed the opinion that a valid election for the office could not then be held, owing to the lack of official notice, and that manifestly the people had been generally misled, should it be conceded that the law required the office to be filled at that election. On those grounds we refused to grant the writ. Hence it is clear that, unless, without the writ, the nomination papers were filed, the relator's name was not printed on the ballot; and that the name of the office as one to be voted for was not upon the official ballot, unless the County Clerks in preparing the ballots ignored the absence of notice.

While blank spaces are left upon the ballot after the name of each candidate printed thereon, in which a voter may write a name and vote for such person by proper mark-

ing and by erasing a printed name, it is by no means clear that the statute authorizes the voter to write upon the ballot the name of an office not printed thereon.   He is not permitted to prepare the ballot.

It is quite generally known that a question arose whether or not the general election of 1902 was the proper time for holding an election for the office in question; and that, while opinions may have differed, the proper construction of the statutes was looked upon as a matter of some doubt. As indicated above, the Attorney General held that an election ought not to occur in November, 1902.   We did not feel called upon to decide that question in the former case above cited, nor do we now deem it incumbent upon the court to do so.

In view of the situation, we are of the opinion that the relator should be required to allege the facts showing whether or not the electors were generally notified that an election for the office would be held, and the manner of that notification, if the legal notices were not given, and whether or not the name of the office was printed upon the official ballots as one to be voted for, so that the electors were afforded a convenient opportunity to express their choice, and the number of votes cast for the office, approximately, at least, as well as the number of votes approximately cast for other offices voted for in the counties composing the Third District; so as to show, if it be a fact, that the election for the office was participated in by the voters of the district to such an extent as to render the election valid and legal, as a fair expression of the choice of the electors, independent of the giving of the notice or the publishing of the required legal proclamation.

For the reasons indicated, the demurrer will be sustained.   If desired, the relator will be allowed, upon application, a reasonable time to amend his petition to cover the defects above pointed out.

Corn, C. J., and Knight, J., concur.